FILED

NOT FOR PUBLICATION

JUL 16 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INDUSTRIAL CUSTOMERS OF NORTHWEST UTILITIES, et al., | Nos. 09-70290, 09-70390, and 09-70393 |
| Petitioners, | BPA Nos. TRM-12-A-01 |
| ALCOA INC. and NORTHWEST REQUIREMENTS UTILITIES, | TRM-12-A-02 |
| Intervenors, | MEMORANDUM[*] |
| v. | |
| BONNEVILLE POWER ADMINISTRATION and THE UNITED STATES DEPARTMENT OF ENERGY, | |
| Respondents. | |

On Petition for Review of an Order of the
Bonneville Power Administration

Argued and Submitted May 4, 2010
Portland, Oregon

Before: KLEINFELD, BEA and IKUTA, Circuit Judges.

_____

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Petitioners, the Industrial Customers of Northwest Utilities, Georgia-Pacific, LLC, and Clatskanie People's Utility District, seek review of the Bonneville Power Administration's ("BPA") Tiered Rate Methodology, as approved via the Tiered Rate Methodology Record of Decision. Petitioners seek a ruling by this court that the Tiered Rate Methodology Record of Decision be vacated and this case remanded for further proceedings. They contend the decision violates the Pacific Northwest Electric Power Planning and Conservation Act of 1980 (the "Northwest Power Act"). The Tiered Rate Methodology sets a new method by which BPA will calculate future rates charged to its customers when their current contracts expire.

It is undisputed that the Tiered Rate Methodology Record of Decision is a "final action" within the meaning of the Northwest Power Act, 16 U.S.C. §§ 839–839h, which vests this court with original jurisdiction to review challenges to final actions or the implementation of final actions by the BPA. 16 U.S.C. § 839f(e)(5).

First, the petitioners challenge the Tiered Rate Methodology under section 7(b)(4) of the Northwest Power Act. 16 U.S.C. § 839e(b)(4). The petitioners contend that the Tiered Rate Methodology will result in the BPA charging the same market-based rate for some "contracted-for or committed-to" load as it charges for new large single loads, thus violating a statutory mandate in the

Northwest Power Act that such rates be different. *See* 16 U.S.C. § 839a(13). The petitioners also contend that the resulting rates will not be of "general application." *See* 16 U.S.C. § 839e(b)(1).

In determining whether a challenge is ripe for review, we must distinguish "between challenges to contractual provisions on the grounds that those provisions will affect future rate-making and cost allocation decisions, and challenges premised on the contention that the agency lacks statutory authority to agree to specific contractual terms." *Pacific Northwest Generating Co-op. v. Dep't of Energy*, 580 F.3d 792, 806 n.20 (9th Cir. 2009). The former challenges constitute rate determinations that are not ripe until "confirmation and approval by the Federal Energy Regulatory Commission ["FERC"]." 16 U.S.C. § 839f(e)(4)(D); *see* 16 U.S.C. § 839e(m)(2). The BPA has not set rates pursuant to the new Tiered Rate Methodology, nor has FERC approved such rates or the method of calculating those rates.

Because the BPA has not yet completed a rate-making proceeding, and the petitioners' challenge under section 7(b)(4) is based on future rate-making and cost allocation decisions, this challenge is not ripe for review. *See California Energy Res. Conserv. & Dev. Comm'n v. Johnson*, 807 F.2d 1456, 1463 (9th Cir. 1986) ("A decision at this juncture would resolve a dispute about hypothetical rates.").

Similar challenges were brought to a new method of calculating rates by the BPA

in 1983, again before the actual rates were set and approved by FERC. We

dismissed those petitions for lack of jurisdiction:

> The issue is whether we have jurisdiction to consider the petitions. 16 U.S.C. § 839f(e)(1) provides that only "final actions" are subject to judicial review, and lists "final rate determinations" as being among these reviewable actions. 16 U.S.C. § 839f(e)(4)(D) provides that rate determinations are final only upon confirmation by FERC. 16 U.S.C. § 839f(e)(5) gives jurisdiction to courts of appeals to hear suits challenging these final actions. Thus, unless there was a final action as of the date the petition was filed, we do not have jurisdiction.

*City of Seattle v. Johnson*, 813 F.2d 1364, 1367 (9th Cir. 1987) (per curiam). After

FERC approved the 1983 rates, we then had jurisdiction to hear the petitions for

review challenging such rates and the method under which those rates were

calculated. *CP Nat'l Corp. v. Jura*, 876 F.2d 745, 747 (9th Cir. 1989).[1] Because

the petitioners' challenge is not ripe for review, there is no "case or controversy"

and thus we have no jurisdiction to review the merits of the petitions. *See* U.S.

Const. art III, § 2, cl. 1; *see CP Nat'l Corp.*, 876 F.2d at 747.

Because the BPA has not yet completed a rate-making proceeding, and the

petitioners are not challenging an actual rate made in violation of a controlling

---

[1] Even when rates are set by the BPA, they are not subject to our review until approved by FERC. *See Cal. Energy Res. Conserv. & Dev. Comm'n v. Johnson*, 767 F.2d 631, 634–35 (9th Cir. 1985); *Cent. Lincoln Peoples' Util. Dist. v. Johnson*, 735 F.2d 1101, 1109–10 (9th Cir. 1984).

4

statute, these particular challenges are not ripe for decision. *See Cal. Energy Res. Conserv. & Dev. Comm'n v. Johnson*, 807 F.2d at 1463 ("[a] decision at this juncture would resolve a dispute about hypothetical rates."). Because the petitions are not ripe for review, there is no "case or controversy" and thus we have no jurisdiction to review the merits of the petitions. *See id.*

Second, Georgia Pacific contends that the Tiered Rate Methodology effects an unconstitutional taking. Assuming without deciding that we otherwise have jurisdiction over this claim under the Northwest Power Act and the Tucker Act, *see* 16 U.S.C. § 839f(e)(5); 28 U.S.C. § 1491(a)(1), we conclude that this claim also is unripe. It is clear that any alleged taking resulting from a change in rates will not occur until FERC approves such rates. *See City of Seattle*, 813 F.2d at 1367. Thus, Georgia Pacific's challenge is not ripe, and we lack jurisdiction to consider it. *See id.*

Once the BPA sets the new rates and FERC approves such rates, the petitioners may be able to file new petitions for review with this court. *See Pacific Northwest Generating Co-op.,* 580 F.3d at 805–06 (quoting *Pub. Utils. Comm'r of Or. v. BPA*, 767 F.2d 622, 629 (9th Cir.1985), for the proposition that a challenge to the method of calculating rates, dismissed as unripe at this stage, could become reviewable at a later date because "[i]f FERC fails to correct any defects in the

5

methodology [which affected rate setting], redress is available in the court of appeals," where "any . . . cognizable challenges will be fully reviewable . . . ."); *see also id.* at 806 n.20.

Finally, the Industrial Customers contend that a provision of the Tiered Rate Methodology that provides special treatment to the Department of Energy's facility at Richland, Washington and to a class of yet-to-exist public utilities is arbitrary and capricious. Specifically, the BPA reserved Tier 1 rates for some amount of unrealized load for these entities, while declining to "set aside power at Tier 1 rates for . . . unrealized, nonexistent load" for all other customers. Because this claim challenges the BPA's authority to provide such differential treatment, and neither challenges a rate established under the Tiered Rate Methodology nor requires analysis of hypothetical characteristics of future rates, we conclude that it is ripe. *See id.* at 806 n.20. Petitioners make no claim that provision of power to the Richland facility and other public utilities will ineluctably deprive petitioners of Tier 1 rates.

This claim fails on the merits, however, because the BPA did not act arbitrarily and capriciously. The BPA explained that "issues of national security, nuclear management, Federal agency status . . . and actual construction and timing of the load" justified special treatment of Department of Energy's Richland

6

facility. Likewise, as to the new public utilities, the BPA noted that reserving some lower-cost federal power for those new market entrants would ensure that federal power was "more widely available while providing planning certainty for the amount of power BPA may need . . . in the future."

The BPA's explanations are sufficient to satisfy its burden under the Administrative Procedure Act, 5 U.S.C. §§ 701–06. The Industrial Customers have failed to demonstrate that the BPA "has relied on factors which Congress has not intended it to consider" or provided an explanation "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Confederated Tribes of Umatilla Indian Reservation v. Bonneville Power Admin.*, 342 F.3d 924, 928 (9th Cir. 2003) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

Accordingly, we dismiss for lack of jurisdiction the petitioners' challenge to the Tiered Rate Methodology Record of Decision under section 7(b)(4) of the Northwest Power Act, 16 U.S.C. § 839e(b)(4), as well as Georgia Pacific's takings claim. We deny the Industrial Customers' challenge to the Tiered Rate Methodology as arbitrary and capricious.

**PETITION No. 09-70290 DENIED IN PART and DISMISSED IN PART; PETITIONS Nos. 09-70390, 09-70393 DISMISSED.**